Decided, January 20th, 1817.
1. Chancery Practice — Answer—Amendment.*—After issue joined, and the cause set for hearing, the defendant in Chancery may he permitted, for good cause shewn, to amend his Answer, and to plead the statutes of frauds and limitations.
2. Same — Plea in Addition to Answer. — A mistake of the defendant’s counsel, in advising him that he could avail himself of the defence without pleading, is sufficient ground for leave to file the pleas, in addition to the Answer.
3. Statute of Frauds — Contract for Land — Part Performance. † — It seems, that payment of the purchase money is not sufficient part performance of a verbal contract for land, to take it out of the statute of frauds.
In obedience to this order, he appeared, and his Answers to the Interrogatories were committed to writing, and inserted in the Record. In October, 1811, on his Petition filed, leave was given to amend his Answer: whereupon, by way of such amendment, he alleged that the agreement, if it ever was made, was an actual or constructive fraud on him ; and also pleaded the statutes of frauds and perjuries, and for limitation of actions, in bar of the plaintiff’s claim. To the defendant’s being permitted to make this amendment, the plaintiffs objected, “as inadmissible, after an indulgence granted to the defendant in permitting him to file his answer heretofore ; and because the cause stood now for trial, and was heretofore continued at the defendant’s request; and the pleas were not to the merits; but the Court overruled the objections, the counsel originally employed by the defendant stating, that he conceived the defence could be made without specially relying on it.”
The other circumstances of this case are fully set forth in the following opinion of Chancellor Carr. The County Court, on hearing the cause, dismissed the Bill with costs; from which *Decree, the plaintiffs appealed to the Superior Court of Chancery holden at Clarksburg.
In October, 1813, C HAN CEDE O R CARR pronounced the following - Opinion and Decree.
Before I proceed to consider the merits of the case, it may be proper to notice some irregularities which have occurred in its progress through the Court below. If the defendant does not file his answer within three months after the filing of the Bill, having also been served three months with the subpoena, the plaintiff may have either a general commission to take depositions, (which course he will generally pursue, where he does not need the aid of the defendant’s answer,) or he may have the defendant brought in to answer interrogatories; (and this he will do, where his Bill seeks a discovery, and he cannot make out his case without an application to the defendant’s conscience:) in either case, he may proceed on to hearing, as if the Answer had been filed and the cause at issue. But the Court, for good cause shewn, may allow the Answer to be filed, and give a farther day for hearing. Under this law, the complainants, at the November Court, 1810, obtained an order of Court, for bringing in the defendant at the next Term to answer interrogatories. At the next Term, however, it should seem that the defendant shewed good cause to the Court in excuse of his contempt, for he was then permitted, on motion, to file his Answer. Thus far all is correct. And, now, the order bringing in the defendant to answer interrogatories, should have been discharged for two reasons, first, because, by coming in and shewing such cause, as induced the Court to prevent the filing of the Answer, he has cleared his contempt: 2dly, because, by filing the Answer, the interrogatories became useless: for no interrogatories could properly be filed, but such as were extracted from the plaintiff’s bill, and fairly pertinent to the case stated in it: and to all such the Answer would respond if sufficient, and if insufficient, the Court would have refused to receive it, but would have considered the defendant still in contempt, and directed the proper proceedings. Instead of this course, the Court, at the same Term, at which they received the defendant’s Answer, ordered that he should, either at that *or the next Court, answer the interrogatories, and that, in the mean time, he should be attached by his body: in other words, taken into actual custody. This order was certainly improper. There is another error in this Record; probably a clerical error. By the Act of Assembly constituting and regulating the Chancery Court, it is enacted that, after a general commission, six months shall be allowed for taking depositions, and either party at the end of six months may set the cause for hearing. It does not appear from the Record, that this cause was ever set for hearing. I think that step ought to appear: of this, however, lam not very certain.”
“Having noticed these irregularities, I shall proceed with the cause. But, before I come to its merits, there is still another preliminary point to settle; that is, whether the Court below’ did right, in permitting the defendant, on the cause shewn by him, to amend his Answer, by adding the pleas of the statute of frauds and perjuries, and the statute of limitations. I have examined this question with some attention. Courts of Chancery, without difficulty, permit amendments in small matters, before issue joined; but, after issue joined, depositions taken, and the cause ready for hearing, they are extremely cautions of permitting a defendant to amend his Answer; and for this strong reason : the plaintiff’s case is now fully disclosed; the defendant is fully apprized of the weight of his evidence; he feels where it presses most heavily, and where his own cause is weakest, and most in need of support: to suffer him, at this time, to avail himself of his own oath by way of amendment, would be to give him an unfair advantage, and holds out too strong a temptation to perjury. It ought, therefore, but rarely to be permitted. There are cases, however, in which Courts do suffer it; for there is no fixed rule on the subject, (say the books,) but every application of this kind is to the discretion of the Court. In the case of Eiggon v. Smith, reported in 4 H. & M., 405, the Chancellor of the Richmond District, after reviewing most of the English cases on the subject, concludes that, under some circumstances, leave to amend his answer may be given to a defendant; and lays down rules for regulating such motions in his Court. In Pearce v. Grove, 3 Atk. 522, the Court refused to allow the defendant to amend his Answer, by striking out of it the admission of a fact, by which the plaintiff would be deprived of it as evidence; ^especially, as he did not swear that he was surprised into the admission of it, or ill advised in setting it forth: from *448 which i't would seem, that, if the defendant had sworn to surprise or ill advice in setting forth the fact, the Chancellor would have suffered the amendment. In 1 Bac. Abr. 171, it is said, “There are no certain rules for the amendment of Answers, but they are in the discretion of the Courts; the admission of a fact is never suffered to be struck out, but on affidavit of surprise, or the defendant being ill advised. But, where an amendment is admitted in the Bill, where through inadvertency, a mistake is made as to a fact or date, where there is no danger of perjury, where the case depends upon old documents, &c. &c. the Courts have allowed amendments to be made, either by striking out passages, or making new facts, and this after issue joined, or upon the hearing of the cause.”
Let us now consider the case, made by the Record, upon its merits. The Bill states a parol Contract for Land, with ants of part performance, and prays a specific execution. The Answer states that defendant had heard of such verbal Contract between plaintiff and his father, but denies having made such an one himself: and this denial, though not a very positive one, (for he only says that he does not recollect making such a Contract,) is certainly no admission, but is a sufficient denial to put the plaintiff on the proof. The defendant also pleads the Statute of Frauds and Perjuries and the Statute of *Limitations. The 1st question will be has the plaintiff made good his case, by the evidence? 2dly. How does the Statute of Frauds and Perjuries affect it? 3dly. Ought a Court of Equity, after the length of time which has elapsed, to lend its aid to carry it into execution? It will be recollected that in Chancery, as at Common Law, the allegata and probata must always agree. The plaintiff nlust prove the case which he sets out in his Bill; and, although he should make out in evidence a good case, which, under other circumstances, would secure the interposition of the Court, yet, if it be not the very case made by the Bill, it will not support the Bill. The case, here stated by the plaintiff, is that the defendant agreed with the plaintiff that, if he would clear out the land, and get a Patent at his expense, he the defendant would convey to him the one half; and that, in execution of this Contract made with the defendant, he the plaintiff did procure a Warrant, survey the Land, and obtain the Patent. The Answer acknowledges that the defendant had heard of a verbal Contract, to the effect stated in the Bill, between the plaintiff and his father, but denies that the defendant himself ever made such a Contract. That part of the Answer, which states the existence of a Contract between the complainant and the defendant’s father, is supported by the deposition of Samuel Pringle, who says that, “in the fall of 1787, he and old Mr. John Outright senior fell in conversation, and said Cut-right informed the deponent, that he had agreed to give Edward Jackson a part of *449 iiis Land for clearing it out.” A question, too, asked the same Witness by the plain-tii'f, seems to strengthen the idea that the Contract was made with the father: he asks, ‘ ‘did you not hear the defendant Cutright say that Edward Jackson had stopped his money somehow in settlement, and for that he would not let him have the land that he was to have from his father? Here then is the answer thus corroborated, proving a Contract with the father. Ret us see whether there be any evidence to establish a Contract with the son. The deponents Joseph Hall and Mary Carney state that, “about 14 years ago they heard the defendant say that, if Edward Jackson died, he should be the gainer, for there was land in partnership between them; that the Patent was in his name, and Jackson had not the scrape of a *pen.” Isaac Cut-right, Samuel Warner, Zachariah Westfall and John Westfall state that, “about 12 or 14 years ago, they respectively made proposals to the defendant to buy a particular part of his land; he said they must go to Edward Jackson and purchase it, and he would make a title.” John Casto says that, “about 19 or 20 years past, he applied to the defendant to buy land, who told him that one half of the pre-emption right belonged to Edward Jackson.” William Pringle says that, “he has often heard the defendant say that Edward Jackson was to have one half the pre-emption right for clearing it out of the office.”— Thomas Carney says, “that, about 14 years past, the defendant asked him if he thought Edward Jackson could take any of his land, as he had a deed for the whole? The deponent inquired if Edward Jackson had writings? He said, No 1 How did he claim it?" Eor getting it out of the office below, and getting a Patent, for which Edward was to have half.” This is all the evidence on the subject of the Contract. It certainly proves that, at the time of the conversation spoken of by the Witnesses, the defendant supposed that the plaintiff had a right to one half of the pre-emption Tract, and that he derived this right from a Contract with somebody. And, if there were nothing in the .Record pointing to a different person, we should naturally, perhaps necessarily, conclude that the defendant himself was the person, with whom the plaintiff had made this Contract. But we have already seen, that there was precisely suGh a Contract, as these conversations describe, made between the plaintiff and the father of the defendant. When, therefore, the defendant said, that there was land in partnership between Edward Jackson and himself,— when he sent persons to buy of Edward Jackson, saying that he would make the title, — when he said that Edward Jackson was to have half the pre-emption right for clearing it out ; — ought we to consider these confessions, as referring to the Contract between Edward Jackson and the defendant’s father, which Contract is proved by distinct testimony, and to which they are perfectly applicable? or ought we to make them the evidence of a new Contract, between the plaintiff and the defendant himself, which is denied by the Answer, and of which there is no other evidence in ' the record? To my mind *it seems, that we must refer them to the Contract between Edward Jackson and the defendant’s father; and I must consider them as expressing the defendant’s opinion as to the rights of Edward Jackson under that Contract. Eet it be observed that none of the observations made by the defendant designate a Contract made by himself. He is no where related to have said, 1 ‘I have agreed to give Edward Jackson one half of the pre-emption right for clearing it out; but he says, Edward Jackson is to have;”' “Edward Jackson has a right to one half;” “There is Land in partnership between us:” a style rather more likelj' to have been used, I think, in speaking of his father’s Contract, than of one made by himself. I therefore conclude, as to this point, that the plaintiff has not proved this case. But it may be said, that he has proved a case against the father; and if he was entitled to a specific performance as against him, the Contract would equally bind his representatives, and which is certainly the law. Bur the objection here is that the plaintiff has sued on a Contract, made with the defendant himself, and can only recover by supporting his case. If he had sued the defendant, as representative of his father, and charged a Contract made with the father, his right to a specific execution against the representatives would have been as strong as against the father; but that would have been a different case; the defendant must have been sued as Heir, and the Writ must have taken in all the Heirs.
Having decided that the plaintiff has not supported his Bill by the evidence, it may seem unnecessary to touch the other points with respect to the Statutes. I will, however, say a few words as to each. The Statute of Frauds and Perjuries, I consider a most excellent and beneficial Statute, and founded in much wisdom; and I sincerely wish that the Courts of England had been as anxious to execute it strictly, as they seem to have been to search out and catch at circumstances to take cases out of its operation. They have taken, in construing it, an unbounded latitude. One consequence of which is, that, in many cases, their decisions amount to an actual repeal of the Statute, and the introduction of the very evils, which it meant to prevent. Another consequence of leaving the plain letter of the Statute has been, that the Judges, having *no guide but their own discretion, seem to have been wandering in a field without path or limit. Every one has thought he was at liberty to strike out a way for himself; and there are nearly as many varying opinions, with respect to the extent and application of the Statute, as there have been Chancellors on the English Bench. These clashing decisions present a chaos, from which it has baffled the ingenuity of their ablest writers to produce order or light. Any one who will read Roberts, Sugden, Eonblanque, or Newland, on this subject, will see at once the extent of the evil. Indeed, the English Judges themselves have become sensible of it, and in their latter decisions are *450 visibly returning to a more strict and rigid construction of the Statute. They all (as may be seen from the latest writers and reported cases,) begin to think with Lord Kenyon, who, in Chater v. Beckwith, 7 Term Rep. 201, says, “1 lament extremely that exceptions were ever introduced, in construing the Statute of Frauds. It is a very beneficial Statute: and, if the Courts had at first abided by the strict letter of the Act, it would have prevented a multitude of suits, that have since been brought.”
In our own Courts, but few decisions on the Statute have taken place; but, from their spirit, and from the observations of some of the Judges, it is much to be hoped that, by keeping to the letter of the Act, they will avoid the dilemma into which the English Judges have brought themselves. Thus much of the Statute in general. The particular point on which it was supposed, that the cause before us was taken out of the Act, was a part performance by the plaintiff, in purchasing the Warrant and paying the money necessary in clearing out the land. That there are some acts of part performance, which will take a cause out of the Statute, seems to be generally agreed: but, what are such Acts, is a point which has exceedingly divided and embarrassed the Judges; particularly, whether the payment of money be such an Act? In Eacon v. Mertins, 3 Atk. 1; Dickinson v. Adams, cited 4 Vesey, jr. 722; Main v. Melbourn, 4 Vesey, jr. 720, and several other cases, it is decided, that the payment of money will take a case out of the Statute. In 1 Term Rep. 486; 2 Cha. Cases 135, Leak v. Morrice, 1 Vern. 472, Alsopp v. Patton; Prec. in Ch’y. 560, Seagood v. Meale; 2 Eq. cases abr. 46, Lord Fin-gall *v. Ross; it is decided, that the payment of money is not an available part performance. Sugden, in his law of Vendors (a late and very excellent treatise) brings all these warring authorities together, and observes, “Upon the whole it appears clearly that, since the Statute of Frauds, the payment of a small sum can not be deemed a part performance. The dicta are in favour of a considerable sum being a part performance; but it is clear, that this construction is not authorized by the Statute; and it is opposed by a case in which the contrary was decided upon the most convincing grounds;” and he cites Butcher v. Butcher, 9 Vesey, jr. 382. After some farther observations, he adds, “Since the above observations were written, a decision of Lord Redesdale’s has appeared, in which he held clearly, that payment of purchase money is not a part performance; and, although his Lordship did not advert to all the cases on the subject, yet it is sincerely to be hoped, that his decision will put the point at rest.” The case here referred to is, that of Clinan v. Cook,,l Schoales and Lef. 22, in which Lord Redesdale, after reasoning at considerable length, and with great ability, decides that the payment of money will not take a case out of the Statute. Newland, in his treatise on Contracts, which I would recommend to the perusal of every lawyer, speaking on this subject, says, p. 187, “If this point be considered with respect to the obvious intention of the Legislature in passing the Act, and to the principle on which Courts of Equity proceed, in permitting a part performance of an agreement to be a ground for avoiding the Statute, this case can not be deemed to be excepted out of it.” After some farther observations, he adds, “This point, however, is involved in much perplexity, by the jarring opinions of the Court upon it.”
From the best opinion I have been able to form on this subject, after considerable reflection, I incline to think, that the payment of money is not such a part performance as will take a case out of the Statute.
Now as to the Statute of Limitations. When this contract was made does not exactly appear. Samuel Pringle heard of it in 1787, — 26 years ago. John Casto heard of it 19 or 20 years past. The patent is dated in 1795, — 18 years ago. Although ■‘“'it does not appear exactly how long, it has evidently been a very long time since the plaintiff knew, that the defendant refused to execute and denied the contract. The Record presents no grounds to excuse this negligence. The time of the Bankruptcy is no where stated; but, if it had been, it could furnish no ground to stop the running of the Statute: for it was as much the duty of tne assignees to proceed diligently, as of the Bankrupt. Where application is made to a Court of Chancery for specific performance of a Contract, all the circumstances are taken into view: among others, the length of time, if considerable, is always thought a very weighty objection: it necessarily operates a change in the situation of the parties, and the subject matter of the contract. In Main v. Melbourn, 4 Vesey, jr. 720, a Bill was brought for specific performance of a contract, by which a right of common, which had been allotted to the defendant, was sold by him to the plaintiff; the defendant pleaded the Statute of Frauds, and it was allowed. The Chancellor, in his opinion, says, that it was better for the plaintiff to allow the plea, for that he should dismiss the Bill on the circumstances; and states a very material circumstance to be, that the plaintiff had rested five years before he brought his Bill; during which time, the property must have appreciated. In Harrison v. Harrison, 1 Call 419, Mr. Pendleton delivering the opinion of the Court, says, “There is no positive direction in the Statute (of Limitations meaning) that the Court of Chancery shall be bound by the periods prescribed in the law; but that Court adopts them by analogy to the rules of law.” But the strongest and most forcible remarks, which I have seen on this subject, are contained in the opinion of that excellent Judge, Lord Camden, in the case of Smith v. Clery, reported by Ambler, p. 645, and cited in Bro. Ch. cases 639. He says, “A Court of Equity, which is never active in relief against conscience, or public convenience, has always refused its aid to stale demands, where a party has set upon his right, and acquiesced for a great length of time. Nothing can call this. Court into activity, but conscience, good faith, and reasonable *451 diligence: where these are wanting, the Court is passive and does nothing. Laches and neglect are always discountenanced; and, therefore, from *the beginning, there was always a limitation to suits in this Court. Expedit Reipublicoe ut sit finis litium, is a maxim, that has prevailed in this Court, at all times, without the help of an Act of Parliament. But, as the Court had no Legislative power, it could not properly define the time of Bar, by a positive rule, to an hour, a minute, or a year. But, as often as Parliament had limited the time of actions and remedies to a certain period in legal proceedings, the Court of Chancery adopted that Rule, and applied it to similar cases in Equity. Eor, when the Legislature had fixed the time at law, it would have been preposterous for Equity (which by its own proper authority had always a limitation) to countenance laches beyond the period, that Law had been confined to by Parliament; and, therefore, in all cases where the legal right has been barred by Parliament, the equitable right to the same thing has been concluded by the same Bar.”
To this doctrine I heartily and entirely subscribe. It may be said, that there is a trust here, which will prevent the Statute from applying. But I can see no farther trust, in this case, than in any other where a party, without complying with the requisitions of the Statute, goes on to perform a part of the contract himself. In every such case, he trusts to the honor and good faith of the other party; and, if this trust would prevent the Statute from running, no length of time would stand in the way of a party seeking a specific execution on the ground of part performance: but this we know is not the case; for no rule is better settled, than that a party seeking a specific performance must come recently, and not sleep upon his case. I conclude, therefore, that even if the case in the Bill were sustained, a Court of Equity ought not, after this length oí time, to lend its aid to the plaintiff. 1 have not decided in my own mind, whether the errors in the Court below, noticed in the early part of this opinion, are sufficient to reverse the Judgment of that Court: for, as the plaintiff has shewed a case, which under no circumstances would justify a Decree in his favour, it would, I think, be worse than useless to send the parties back, and, by keeping them longer in litigation, multiply costs and trouble. In one point, however, I differ with the Court below; the giving costs to the “defendant. Although the defendant is protected, by the law and the circumstances, from a Decree against him, yet I have a strong suspicion, that he has neither acted with honor nor good faith. I shall not, therefore, give him eosts, either here or in the County Court; but shall direct, that each party pay his own costs, both here and there. With this exception, the Decree of the Court below is affirmed.”
The County Court erred in decreeing without an Answer from Clark, the other defendant. It was essential to the decision, that his Answer should have been before the Court. Yet he never answered, and no decree nisi was served upon him.
2. The Court ought not to have permitted the defendant to amend his Answer, after issue joined, for the purpose of pleading the Statutes of Erauds and Limitations. Leave to amend the answer is matter of discretion, and not allowed, after issue joined, except under very special circumstances, (a) There should not only be an affidavit, but notice to the plaintiff, and payment of costs. In this case, leave was granted without notice, and costs were not required to be paid. Amendments may be allowed where facts have been omitted by mistake; but it is not right to permit the party to amend upon a supposed mistake of the law, as was the case here.(b) The Court too, will not permit an amendment by pleading the statutes; for such a plea does not go to the equity of the case, but rather destroys it. A Court of Law will not allow a defendant to set aside an office judgment by pleading the Act of Limitations; because it is not an issuable plea. So, in a Court of Equity, where the defendant has, by Answer, admitted the agreement, and submitted to perform it, he cannot afterwards plead the Statute of Erauds, (c) even in answer to an amended Bill.
3. As to the merits, the Chancellor says, that the allegata and probata do not agree. But the only difference between them is that, in the Bill it is said, the defendant made the bargain, and, according to the proof, his father did; which is no material variance. Ilis answer to the first interrogatory proves, that he assented to hio father’s agreement, and thereby made *it his own. The depositions prove clearly that he and his father repeatedly acknowledged Jackson’s right. 4. The Statute of Frauds, (if properly pleaded,) does not affect the case; the contract having been partly performed. Whether the payment of money is per se a part performance, is a point much litigated, (d) But Sugden says, it is generally understood that payment of a substantial sum is part performance. In this case, there were also other acts. The plaintiff procured the Warrant, had the land surveyed, &c. under the contract. Possession of the land, and making improvements, also amount to part performance, (e) So, too, an answer, admitting the agreement takes the case out of the Statute, (f)
5. The Statute of Limitations does not apply; for Cutright, having obtained a Palent for the whole of the land, was a trustee for the plaintiff for part, in consequence of the agreement. Besides, the statute is no bar in cases of frauds, (g) Here fraud is charged and proved; for the defendant promised to convey to the plain *452 -tiff half the land, but did not, and takes advantage of the Patent. The admission, in the Answer, moreover, takes the case ■out of the Act. (a)
2. In Henderson v. Hudson, 1 Munf. 514, the case was decided on the plea of the Statute of Frauds, though put in, by an amendment to the Answer, and after the cause was set for hearing. That nicety of practice, which exists in England, does not prevail in our County. Courts. In England, the Answer is taken before Commissioners, who examine the respondent; but such is not the case here. In this country, there must be a reasonable latitude in receiving pleas, even to enable the party to take advantage of points of law. (2) Here the ground for admitting the amendment was the mistake of counsel, *who gave his opinion that it was unneces.sary to plead the Statute. This mistake prevented the plea from being filed in the first instance.
3. The variance between the allegata and probata in this case was material and important. The plaintiff cannot recover upon proving an agreement, totally different from that relied upon in his Bill. ■
4. There was no such part performance as would take the case out of the Statute of Frauds. The plaintiff did no more than pay for the Warrant. The Survey was by the Surveyor in his official character. There is no proof that the plaintiff, or any person claiming under him, had possession of the land.
5. With respect to the Act of Limitations, I admit that, where fraud has been committed, and not discovered by the party defrauded, the Act will not run ; but it will from the time when the fraud was discovered.. In this case, if there was any fraud in refusing to convey the land, it was known to the plaintiff many years ago, and he ought to have filed his Bill when the transaction was recent.
On other grounds, independent of these nice legal objections, the case is clear for the defendant, upon the merits. The agreement to allow half the land, for making the entry, paying the Surveyor’s fee, and getting out the Patent, was unconscionable. Besides, it is not proved that the plaintiff took out the Patent. The claim, too, (from the circumstances,) was probably either satisfied or abandoned. A Court of Equity will not decree performance of hard or unconscionable agreements, but will leave the plaintiff to his remedy at Eaw.
Where the Answer of a party is essential to a decision, the Court ought not to decree, even though the plaintiff has neglected to bring that party before the Court. (b)
*January 20th, 1817, . JUDGE ROANE pronounced the Court’s opinion, that there was no error in the Decree, which therefore was affirmed.
Chancery Practice — Answer — Amendment. — See monographic note on "Answers in Equity Pleading” appended to Tate v. Vance, 27 Gratt. 571.
Same — Evidence Must Support Allegations of Bill. —While it is true that a rigid and technical construction of bills and proceedings in equity is exploded in favor of substance (Mayo v. Murchie, 3 Munf. 384), a party will not be allowed, even in equity, to recover upon a case proved, essentially differing from that alleged in the bill. (Anthony v. Left-wich, 3 Rand. 263.) And although the plaintiff should make out in evidence a good case, which under other circumstances would secure the interposition of the court, yet, if it be not the very case made by the bill, it will not support the bill. Baugher v. Eichelberger. 11 W. Va. 220, citing the principal case. To the same effect, the principal case is cited inEloyd v. Jones, 19 W. Va. 365; Smith v. Nicholas, 8 Leigh 354; Wren v. Moncure, 95 Va. 375, 28 S. E. Rep. 588.
And in Brown v. Pollard, 89 Va. 701,17 S. E.Rep. 6, it is said: “At law, part performance of a parol agreement (for the sale of land) will not exempt it from the operation of the statute of frauds; and the payment of purchase money is not such part performance as will induce a decree for specific execution. Seel Chitty on Contracts, p. 422; 2Minor, p.858; Jackson v. Outright, 5 Munf. 318; Anthony v. Left-wich, 3 Rand. 255; 2 Lomax Dig. 54.”
Por a collection of cases on the subject of part performance of verbal contracts for the sale of land, see foot-note, to Parrill v. McKinley, 9 Gratt. 1, containing an excerpt from Miller v; Lorentz, 39 W. Va. 172, 19 S. E. Rep. 395, in which the principal case is cited.
See generally, monographic note on “Frauds, Statute of” appended to Beale v. Digges, 6Gratt.582. Sugden, 69. SeeSusden, 74. Sugden, 73. Note. See Harrison v. Brock, 1 Munf. 22.